IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ISAAC DANNY RANDALL,

      Plaintiff,

vs.                                     No. CIV-04-CV-319 JC/WDS

GALE NORTON, Secretary of the Interior,

      Defendant.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon the Defendant's Motion to Dismiss, under FED. R. CIV. P. 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment under FED. R. CIV. P. 56(c), filed May 24, 2005 (*Doc.* 25). Defendant moves to dismiss this case on the following grounds: 1) Plaintiff failed to exhaust his administrative remedies and 2) Plaintiff cannot show a prima facie case of retaliation under Title VII. The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds the Motion well taken and is granted.

**I.    Background**

This employment suit is based on Plaintiff's claim of retaliation. Plaintiff, Isaac Danny Randall, has worked for the Bureau of Land Management (BLM) since 1984, and is currently working in the Albuquerque office. In 1994, Plaintiff transferred from the Santa Fe Office, where he was working as a GS-11, to the Farmington office, where he voluntarily became a GS-9. In 1997, Plaintiff applied for a GS-12 position as a Team Leader in Farmington, but a co-worker

was selected for the position. In June 1999, Plaintiff applied for a GS-11 position in Farmington, but he was not selected. In November 1999, Plaintiff filed his first Equal Employment Opportunity (EEO) complaint for disparate treatment. That complaint was resolved. In July 2000, Plaintiff filed his second EEO complaint, for retaliation. An administrative hearing was held regarding this complaint in July 2003. Plaintiff received a final agency decision from this hearing and did not appeal it.

In December 2001, a vacancy announcement was posted for a GS-11 position in Farmington. Plaintiff submitted an application for this position on December 27, 2001. There were at least three other applicants for the position at that time. Plaintiff knew of no hiring preferences for the position, although a preference did exist for veterans. Plaintiff received a notice from a Rita Richardson on January 11, 2002, that the position was being canceled and that it would be re-advertised. Plaintiff called Richardson twice on January 16, 2002 to ask about the position. Richardson told Plaintiff that the position would be re-advertised because the Internet went down after the first posting and because the BLM wanted to make the standards for the position less restrictive so that more applications would be received. Richardson also told Plaintiff that he would have to re-apply for the position. The position was re-advertised later, but Plaintiff did not re-apply. The position was subsequently offered to the veteran in the hiring group, Plaintiff's co-worker Neil McBride.

In the July 2003 administrative hearing for Plaintiff's second EEO complaint, McBride testified that Ruben Sanchez, Plaintiff's former Team Leader, had told McBride that an announcement for the GS-11 position had been canceled because Plaintiff had applied for it. Plaintiff then filed a third EEO complaint of retaliation in October 2003, based on this testimony.

2

The Equal Employment Opportunity Commission (EEOC) dismissed this complaint in December 2003, granting Plaintiff leave to file this suit. Plaintiff filed suit in March 2004.

**II. Standard of Review**

A complaint may be dismissed pursuant to Rule 12(b)(1) if the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). When considering a motion under Rule 12(b), reference to evidence outside the pleadings does not automatically convert the motion into a Rule 56 motion for summary judgment. *Holt v. United States*, 46 F.3d 1000,1003 (10th Cir. 1995). If the jurisdictional questions presented under Rule 12(b) become intertwined with the merits of the case, however, the court must convert the motion to one falling under Rule 12(b)(6) or for summary judgment. *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999). When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined. *Clark v. Tarrant County*, 798 F.2d 736, 742 (5th Cir.1986) (citing *Bell v. Hood*, 327 U.S. 678 (1946)). Indeed, when a motion is made on the grounds of both 12(b)(1) and12(b)(6), and both parties submit material beyond the pleadings, the Court may convert the motion into one for summary judgment under Rule 56. *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987).

In the present case, the Motion's request is to dismiss Plaintiff's claim for retaliation under 12(b)(1) and 12(b)(6) and both parties have submitted extraneous materials beyond the pleadings. Further, because Defendant argues that Plaintiff cannot show a prima facie case of retaliation, Title VII does become intertwined with a substantive claim in the complaint. Therefore, the Court converts the Motion into one for summary judgment.

Under FED. R. CIV. P. 56, summary judgment is proper in cases where, looking at the facts

3

in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Handy v. Price*, 996 F.2d 1064, 1066 (10th Cir. 1993). The moving party bears the initial burden of establishing that no genuine issue exists as to any material fact. *Nat'l Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993). Once the initial burden has been met, the burden then shifts to the non-moving party to show that a genuine issue of material fact remains for the fact finder to resolve. *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1194 (10th Cir. 1994). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986)).

### III. Discussion

#### A.    Failure to exhaust administrative remedies

##### 1.    Administrative Hearing Order of July 2003

Defendant argues that the July 2003 Administrative Hearing Order regarding Plaintiff's second EEOC claim bars Plaintiff's suit for his third EEOC claim of retaliation in this court. Defendant presents the Administrative Hearing Officer's bench decision, which falls within the EEOC notice of dismissal of this claim, as evidence that the Plaintiff's third EEO complaint was identical to his second. Mem., Ex. B3.

Defendant claims that the parties, time period, location of the office, and the incident of the third complaint were heard and decided by the Administrative Hearing Officer for Plaintiff's second EEO complaint. Mem. at 14. Defendant further claims that because Plaintiff's suits were

truly identical, Plaintiff should have appealed the Administrative Hearing Order of July 2003 instead of filing a new claim of retaliation with the EEOC in September 2003. Mem. at 14.

Plaintiff argues that the administrative hearing only concerned his retaliation claims occurring prior to June 2000. Resp. at 8. Further, Plaintiff claims that the December 2001 job announcement and subsequent January 2002 cancellation in question was a claim not meant to be included within his second EEO claim of retaliation because it occurred after the second complaint was filed. Indeed, Plaintiff notes that "the existence of past acts does not bar employees from filing charges about related discrete acts so long as they are independently discriminatory and the charges are timely filed." Resp. at 11 (citing *Martinez v. Potter*, 347 F.3d 1208, 1277 (C.A.10 (N.M.) 2003)) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

The Court, then, must examine whether the retaliation claims brought under Plaintiff's third EEO complaint were the same as the ones brought under his second complaint, or if they were only related. As Defendant notes, Plaintiff's closest protected activity to the January 2002 job cancellation was the filing of the second EEO complaint in July 2000. Mem. at 15. This definitely indicates that the retaliation cited in the third complaint was in response to the filing of the second complaint, and not materially part of the second complaint.

The Administrative Hearing Officer's bench decision, when resolving the second complaint, does not offer much guidance as to whether the claims are identical. In the excerpt of the hearing transcript, a GS-11 position is referenced as being first raised in the June 6, 1999 EEO complaint, a matter which was purported to have been settled previously. Further, the date of June 6, 1999 is not even mentioned in the portions of McBride's testimony submitted to the court.

McBride Dep. at 146: 3-4.  In fact, according to the McBride testimony, the position in question was not advertised until 2000. *Id*.  The confusion about dates is pervasive.  As the Administrative Hearing Officer notes, regarding McBride's testimony, she is "not sure in what time period this comment might have been made." Mem., Ex. B3.  The Administrative Hearing Officer does make judgments about McBride's credibility as a witness, determining his proffered evidence to be "vague and none specific." *Id*.  This does not alleviate, however, the confusion surrounding whether the dates in question for this suit have already been resolved.  It is decidedly unclear whether the December 2001 job announcement and its subsequent January 2002 cancellation, as raised by this case, are included in the bench decision.  Therefore, Plaintiff's choice to file a new complaint instead of appealing the July 2003 ruling is not deemed a failure to exhaust his administrative remedies.

### 2.     Timely Filing of the EEO Complaint at Issue

Defendant argues that Plaintiff did not timely file his retaliation action with the EEOC, thereby barring his claim.  Defendant correctly asserts that discrete acts of discrimination that are time barred are not actionable. *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).  Acts considered barred must have occurred more than 45 days prior to the request for EEOC counseling. *Id*.  This 45-day limit may be tolled by the agency or Commission, however, when the individual, "did not know and reasonably should not have ... known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2).

By both accepting and then dismissing Plaintiff's complaint in September 2003, for reasons other than the 45-day filing limit, the EEOC has tolled the limitation.  Tenth Circuit case law regarding this subject primarily addresses scenarios when a Plaintiff has completely failed to

6

file anything within the prescribed time limit or the agency itself has rejected a claim for violating a time limit. *See, e.g., Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1323 (10th Cir. 2002) (employer's EEO counselor rejected employee's attempt to file an informal complaint outside the time limit); *Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 859 (10th Cir. 1983) (Plaintiff, having received a right to sue letter, did not file until after the time limit period had run). Here, the facts presented do not fall within those parameters. The EEOC decision to accept the complaint, and subsequently rule on it, leaves the complaint open for decision here. Indeed, in the notice of dismissal sent to the Plaintiff by the EEOC, it is clearly presented that a method of appeal for this claim is to file suit in the U.S. District Court. Mem., Ex. B3.

     Even if the EEOC did not deliberately toll the limitation itself, the Court still finds that the 45-day limitation has been equitably tolled. The propriety of equitable tolling must be determined on a case-by-case basis. *Gonzalez-Aller Balseyro*, 702 F.2d at 859. It is also established law in this circuit, however, that there can be equitable tolling only if the Plaintiff has been "actively misled." *Johnson v. U.S. Postal Service*, 861 F.2d 1475, 1481 (10th Cir. 1988) (quoting *Wilkerson v. Siegfried Ins.*, 683 F.2d 344 at 348). This standard, however, has rarely been applied to a situation like the present case. Although Defendant argues that Plaintiff was put on notice to uncover the discriminatory motive behind the job cancellation in January 2002, other circuits have held that the time limit should be extended until " 'facts that would support a charge of discrimination ... were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff.' " *Wolfolk v. Rivera*, 729 F.2d 1114, 1117 (7th Cir.1984) (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931

7

(5th Cir.1975)).  Indeed, the Tenth Circuit has applied the *Reeb* standard in a case similar to the case at bar in *Wilkerson*. 683 F.2d at 348.  In *Wilkerson*, untrue information provided by the employer about the reason for the discriminatory action was enough to actively mislead the Plaintiff and to allow the claim to go forward. *Id*.  In the present case, facts that would support a charge of discrimination were not made apparent to Plaintiff until the July 2003 hearing.  Plaintiff did inquire as to why the position was canceled in January 2002, and was told it was for a non-discriminatory reason.  This is at least evidence of a factual dispute between parties, and viewed in the light most favorable to Plaintiff, this does present a genuine issue of material fact.

Therefore, although Plaintiff may have filed his complaint more than 45 days after the discriminatory event occurred, the complaint is found to be equitably tolled by the agency in question and by the court; and Plaintiff, further, is found to not be barred from suit by an untimely filing.

### B.     Plaintiff's Failure to Show a Prima Facie Case of Retaliation

The three prong burden-shifting analysis set out in *McDonnell-Douglas Corp. v. Green* applies to Plaintiff's claim. 411 U.S. 792, 802-804 (1973).  To establish a prima facie case of retaliation, the Plaintiff must show that: 1) he engaged in an activity protected by Title VII; 2) an adverse employment action was taken against him subsequent to his participation in the protected activity; and 3) there was a causal connection between his participation in the protected activity and the adverse employment action taken by the employer.  *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).  If the Plaintiff establishes a prima facie case of retaliation, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the decision which adversely affected the employee.  *McDonnell-Douglas Corp.*, 411 U.S. at 802;

*Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). If the employer (Defendant) is able to offer such a reason, the plaintiff may still survive summary judgment by showing a genuine dispute as to material fact of whether the proffered reason for the challenged action is pretextual. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997).

Defendant maintains that Plaintiff can only satisfy the first element of a prima facie retaliation case: engaging in a protected activity. Mem. at 15. This leaves the consideration of whether Plaintiff can establish the elements of an adverse action and a causal connection, which would in turn satisfy the prima facie burden.

Traditionally, conduct is considered an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Put more succinctly, an adverse action must be "materially adverse" to the employee's job status. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1230 (10th Cir. 2004). Failure to promote has been clearly recognized as an adverse employment action, but an action based solely on the cancellation of one vacancy announcement presents murkier waters. The Tenth Circuit takes a liberally defined, case-by-case approach in determining what actually constitutes an adverse employment action. *See Gunnell*, 152 F.3d at 1264; *Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996). There is little guidance from the Circuit, however, about whether canceling a vacancy announcement would constitute an adverse action.

One court has found that a vacancy cancellation can be an adverse action, if the motivation behind the cancellation violates Title VII. *Terry v. Gallegos*, 926 F.Supp 679, 710 (W.D. Tenn.

9

1996). As subsequent decisions make clear, however, the alleged adverse action of a vacancy cancellation is still subject to the *McDonnell* burden shifting analysis, meaning Plaintiff must still further prove that Defendant's reasoning for the cancellation was pretext. *See Bowie v. Ashcroft*, 283 F.Supp.2d 25, 31 n.4 (D.D.C. 2003); *Hayslett v. Perry*, 332 F.Supp.2d 93, 100 n.6 (D.D.C. 2004).

Here, the vacancy announcement cancellation did not change Plaintiff's employment status in any way, or have any future impact upon his job status. Plaintiff was not demoted after the cancellation and there is no record of menial tasks being delegated to him. Indeed, Plaintiff became a GS-11 employee only a year later. Mem. at 11. Further, it is clear that there was a hiring preference for veterans in the position advertised, a category which Plaintiff does not fall under. When the position was later re-advertised, it was first offered to the veteran who had already applied. The fact that Plaintiff did not re-apply when the position was opened again also weighs against him. Although Plaintiff may have thought applying again would have been a futile endeavor, it would have helped to establish that vacancies were being canceled only because Plaintiff was applying. There is not a series of cancellations here, like in *Bowie*, where there were *four* vacancy cancellations and Plaintiff still was not able to meet the prima facie burden. 283 F.Supp.2d at 28 (emphasis added). Additionally, in *Terry*, it was considered futile to apply for a position a *third* time only when an employer's practice was considered gross and pervasive. 926 F.Supp 679 at 709-710 (emphasis added). Here, the evidence presented does support Defendant's reasoning for the cancellation of the one vacancy announcement in question. Therefore, the Court finds that Plaintiff does not meet the prima facie element of an adverse action.

Even assuming, arguendo, that Plaintiff could establish the existence of an adverse action, the element of causal connection needed for this claim is not met.  Under the causal connection analysis, the closer the adverse action occurred to the protected activity, the stronger the likelihood that causation exists.  *See Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation); *Richmond*, 120 F.3d at 209 (10th Cir.1997) (three-month period, standing alone, is insufficient to establish causation). Indeed, unless the adverse action is "*very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (emphasis added).  In the present case, the length of time between the protected activity and the adverse action was almost one and a half years.  Plaintiff's prior protected activity was his second EEO complaint filed in July 2000, while the cancellation occurred in January 2002.

The Plaintiff, then, must rely on additional evidence to prove this element of his prima facie claim. *Anderson*, 181 F.3d at 1179.  Plaintiff relies solely on the 2003 administrative hearing testimony of McBride to bridge this causation gap. Resp. at 13-14.  McBride's actual 2003 deposition testimony is, at best, unclear as to the dates of when the job announcements were being posted and canceled. While this lack of clarity allowed Plaintiff to bypass jurisdictional hurdles, it also prohibits Plaintiff from making a sufficient causal connection.  It is certainly difficult to ascertain from McBride's testimony whether he is speaking of the first, second, or third time that GS-11 job announcement was posted as the same time when Plaintiff's EEO

11

complaint was actually at issue in the decision to cancel the vacancy.

McBride's testimony reveals that the first time the position was canceled, he was told it was because Plaintiff had applied. McBride Dep. at 134:2-7. McBride further states, however, that this same instance of cancellation was "sometime in 2000." McBride Dep. at 146:2-4. The second and third cancellations of the same position occurred after 2000. McBride Dep. at 146:5-9. Further, the second and third cancellations were not because Plaintiff had applied, but because "someone else had applied that they was afraid would file an EEO if they weren't selected." McBride Dep. at 132:13-14. These other applicants were not specified as Plaintiff. McBride Dep. at 134:8-20. Based on this testimony, the time frame of the job announcement and cancellation in December 2001/January 2002, do not match up with the dates McBride testified that Plaintiff was being retaliated against.

It follows, then, that there is not a sufficient causal connection between Plaintiff's January 2002 position cancellation and McBride's testimony regarding a position being canceled because of Plaintiff in 2000. Therefore, the Court finds that the prima facie element of a causal connection is not established and that Plaintiff fails to show a prima facie claim for retaliation.

Wherefore,

**IT IS ORDERED** that Defendants' Motion to Dismiss, or in the Alternative Summary Judgment (*Doc. 25*), filed May 24, 2005, is **granted.**

DATED September 28, 2005.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

>   Donald Sears Jr., Esq.
>   Steven K. Sanders & Associates, LLC
>   Albuquerque, New Mexico

Counsel for Defendants:

>   Cynthia L. Weisman, Esq.
>   Assistant United States Attorney
>   Albuquerque, New Mexico